UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CAROL YOUNG,<br>*Plaintiff,*<br>vs.<br>MARILLA VAN BEUREN,<br>*Defendant.* | C.A. No. 06-092 ML<br>**JURY TRIAL CLAIMED**<br>*(R.I. Superior Court C.A. No. NC06-0091)* |
| MARILLA VAN BEUREN<br>*Third Party Plaintiff,*<br>vs.<br>HOGAN & STONE and JAUNITA ARACIL,<br>*Third Party Defendants.* | **JURY TRIAL CLAIMED** |

THIRD –PARTY COMPLAINT

This third party complaint seeks damages, including indemnification and fees, for third-party defendants', negligence, breach of contract and breach of fiduciary duty.

PARTIES

1. Third Party Plaintiff, Marilla Van Beuren (Van Beuren) is a Florida resident. She is the defendant in a case entitled in Young v. Van Beuren, filed in Newport Superior Court and removed to this court pursuant to 28 USC §1332 and §1441.

2. Third Party Defendant Hogan & Stone is a Rhode Island entity doing business as a real estate brokerage firm throughout Rhode Island.
3. Third Party Defendant Juanita (Janie) Aracil is, upon information and belief, a Rhode Island resident. She is a licensed real estate broker in the state of Rhode Island.
4. This court has jurisdiction over this matter as the amount in controversy exceeds $75,000 and the parties are residents of different states. Therefore, there is jurisdiction pursuant to 28 USC §1332. Venue is proper as the real estate that is the subject of this dispute is in Rhode Island.

FACTS GIVING RISE TO A CAUSE OF ACTION

5. In 2005, Aracil contacted Van Beuren regarding a piece of property for sale in Little Compton, Rhode Island. (the Premises)
6. The Premises were located at 92 Burchard Avenue and was owned by Carol Young.
7. The Premises were advertised as consisting of approximately 5 acres and were used primarily as a horse farm. The structures on the property were two barns. One of the barns was advertised as containing a "New York style loft" apartment.
8. Judith Chase, a licensed real estate broker and Residential Properties Ltd., a Rhode Island real estate brokerage company, were the listing agents representing the seller in the sale of the property.
9. Van Beuren is an equestrienne. She formerly owned a horse farm in Middletown, Rhode Island and currently owns a horse farm in Florida.

10. The listing for the property described it as having access to miles of horse riding trails.

11. When Aracil told Van Beuren about the property, Van Beuren emphasized that she needed a small house for a residence as well as barns for her horses. A small apartment would not be sufficient for her plans for a horse form. At all times, Van Beuren indicated her interest in the property due to possibility of adding an additional dwelling structure or structures to the property.

12. At all times, Aracil and Hogan & Stone acted as Van Beuren's broker and were conduits to the seller of the property, Carol Young and Young's broker.

13. Aracil and Hogan & Stone knew that Van Beuren desired a suitable dwelling for living on the premises. Aracil and Hogan & Stone also knew that she desired access to riding trails. Both of these items were of extreme importance to her in pursuing the transaction.

14. During the course of negotiations leading to the purchase and sale agreement, Van Beuren sought, and third-party defendants provided, assurances that she would be able to build a dwelling suitable for her desires. She also sought and received assurances that the "loft apartment" was an approved and permanent structure.

15. At one visit to the Premises, in the presence of third-party defendants, Van Beuren was shown a "roughed in" area in one of the barns that she was told would be able to be finished for an additional dwelling.

16. During the course of negotiations leading to the Purchase & Sale agreement, she was told, and third party defendants were also told, that plans for an additional dwelling were approved by the town of Little Compton. Van Beuren was told that the existing septic system on the property was appropriate for the loft apartment and any additional structure.
17. At all times, Van Beuren relied on third party defendants to make sure that, in fact, her wishes and desires regarding an additional structure were capable of being accomplished. At all times, Van Beuren relied on Third Party Defendants to make sure that her wishes and desires regarding access to "miles" of riding trails were capable of being accomplished.
18. At all times, third party defendants provided sufficient assurances regarding additional structures and the riding trails and encouraged Van Beuren to sign a Purchase & Sale Agreement for the Premises.
19. In fact, there were no approved plans for the building of an additional structure for the Premises.
20. Although Van Beuren knew that Young did not own the abutting property which were to be used for riding trails, she was told by Young and Chase that the abutting property owner would grant access to the trails. Van Beuren relied on Third Party Defendants to warn her in the event that her wishes regarding the trails were not capable of being accomplished.
21. Van Beuren constantly inquired about a written guarantee for such access to the trails and was told by either Young, Chase or third party defendants, that such a guarantee, or even the purchase of abutting property would be

possible. Van Beuren asked to meet the owner of the abutting property to discuss the issue, but the meeting was never arranged.

22. In fact, Van Beuren did not have access to a written guarantee for access to her requested riding trails and never received such access.

23. At all times during the course of the negotiations, seller's agents and Third Party Defendants pressured Van Beuren to sign a Purchase & Sale Agreement, warning her that other potential buyers would take the property.

24. In reliance on assurances of Third Party Defendants and concerned about the pressures provided by Third Party Defendants,Van Beuren signed several Purchase & Sale agreements in July, 2005.

25. Third-Party Defendants knew that Van Beuren was unsophisticated in business matters. Nevertheless, they sent her, and requested that she sign, numerous different purchase and sale agreements. At all times, Third Party Defendants told Van Beuren that time was of the essence and the she risked losing the Premises if she did not sign the various Purchase & Sale Agreements immediately.

26. Van Beuren signed the agreements in reliance upon the advice of third party defendants. Contrary to accepted real estate practice, Van Beuren provided as a down payment 10% of the purchase price, or $114,000.00

27. After she signed the purchase and sale agreements, Van Beuren continued to investigate and make plans regarding a dwelling and access to the riding trails.

28. She learned that the dwelling would not be feasible and that she would not have unrestricted and permanent access to the riding trails.

29. Because the premises were not as represented, and because they were not valuable to her without these items, and because she was not buying what she thought she would buy, Van Beuren did not close on the property. Van Beuren requested the return of the down payment funds.

30. Subsequently, Young sued Van Bueren for breach of contract.

COUNT I (Breach of Contract)

31. Van Beuren repeats and incorporates paragraphs 1-30 as though set forth in full.

32. Defendants had a contractual obligation to Van Beuren to determine whether she could build the dwelling she desired and whether she could have appropriate, guaranteed and unrestricted access to "miles of riding trails."

33. The contractual obligations of Defendants included verification of the specific items about which Van Beuren expressed concern, including independent corroboration of facts beyond reliance on the statements of seller and seller's broker.

34. Defendants had a contractual obligation to assist Van Beuren to accomplish her goals through the purchase of the premises.

35. Defendants breached this contract and as a result, Van Beuren has been damaged.

COUNT II (Breach of Fiduciary Duty)

36. Van Beuren repeats and incorporates paragraphs 1-35 as though set forth in full.

37. As brokers retained by Van Beuren to protect her interests in the course of the negotiations leading to the signing of the Purchase & Sale Agreement, Defendants had an fiduciary obligation to Van Beuren.

38. Defendants breached their fiduciary duty to Van Beuren and as a result, Van Beuren was damaged.

COUNT III (Negligence)

39. Van Beuren repeats and incorporates paragraphs 1-38 as though set forth in full.

40. As real estate brokers representing Van Beuren in connection with the purchase of the Premises, Defendants had an obligation to conduct themselves in a manner consistent with the actions of qualified real estate brokers representing individuals such as Van Beuren in connection with real estate such as the Premises.

41. Defendants failed to act as a qualified and reasonable real estate broker would have acted under the circumstances. Defendants acted negligently, and as a direct and proximate result of Defendants' negligence, Van Beuren was damaged.

COUNT IV (Good Faith and Fair Dealing)

42. Van Beuren repeats and incorporates paragraphs 1-41 as though set forth in full.

43. At all times, Defendants had the obligation to act with good faith toward Van Beuren and to deal with her fairly.

44. Defendants breached this obligation, and as a result, Van Beuren was damaged.

WHEREFORE, Van Beuren requests that judgment enter on her behalf and that she be awarded her damages, that Defendants be ordered to indemnify her for any judgment against her in the Complaint filed by Carol Young, and that Defendants be ordered to pay costs and fees.

Third Party Plaintiff
By her attorney,

Kevin M. Brill, Esq. (#3084)
211 Angell Street
Providence, RI 02906-2563
Phone: (401) 578-1787
Fax: (401) 272-9937
Email: kbrillesq@hotmail.com

3/6/06

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March 2006, I caused a true copy of the within pleadings via first class mail, postage prepaid to counsel for Plaintiff.

Kevin M. Brill, Esq.